I want to welcome everyone to the 4th Circuit this morning. I appreciate you being here to start early. And our first case is United States v. Miselis. Ms. Lorish. Good morning. May it please the Court. When the Anti-Riot Act was first passed, it was used to try to prosecute Vietnam War protesters and supporters of the Civil Rights Movement. Now, 50 years later, with only one successful prosecution on the books, the government's trying to use it to prosecute white nationalists. The reason that the overbreadth doctrine exists as an exception to traditional standing principles is because it doesn't matter who the government elects to prosecute if the law is so overbroad that it chills legitimate speech for everybody else. Any implicit promise from the government only going to use the law to prosecute really objectionable people... Who do you represent? I represent Mr. Miselis and Mr. Daly, Your Honor. You represent both of them? Well, I represent Mr. Daly and my co-counsel, Mr. Tarleton, represents Mr. Miselis. You represent Mr. Daly? That's correct. And was he convicted of violating the Riot Act? He was convicted of conspiracy to violate the Anti-Riot Act, as was Mr. Miselis. Both appellants have the exact same convictions, Your Honor. He was not convicted of violating the Riot Act? He was not convicted of violating the Anti-Riot Act, but... But you want to challenge the constitutionality of the Riot Act? That's correct, Your Honor, because conspiracy... And the plea agreement talks about the constitutionality in multiple places and doesn't say applied or facial. That's right, Your Honor. It just says constitutional. That's right, Your Honor. But you talk like you're just interested in a facial challenge. That's right. The appellants are only raising a facial challenge to the Anti-Riot Act, and that's preserved by their plea agreement, but also they have the ability to challenge necessarily the constitutionality of the Anti-Riot Act under a conviction for conspiracy to violate the Anti-Riot Act under 371. And your authority for that is a district court case from Alexandria? I believe the government cited the district court case from Alexandria. The cases that I've cited, and I think that case got it right, but this court has said in the Congria case, for example, that when you charge a 371 conspiracy to violate a substantive criminal federal offense, the substantive federal offense becomes an element of the indicted conspiracy. This is different than a 371... But you all cite, what, the Seventh Circuit case? That's also brought up by the government. There are a couple of cases. There's one from the Seventh Circuit and one from Alexandria, Judge Ellis, that Rosen case. That's right. But we didn't, that part of it didn't get here or something. I wrote one of those cases. That wasn't involved. So, again, I think those are the cases the government's relied on, and I think that they still stand for the correct principle that there's two parts of any 371, two possible charges under 371. If the government had charged conspiracy to defraud under 371, we couldn't be here challenging, making a facial challenge to any statute. But you all didn't brief any of this. That's what kind of bothered me. I read this thing, and you take off after this facial challenge, and you hadn't briefed how you get on the Riot Act, and you weren't convicted of the Riot Act, and you take off explaining why the Riot Act is unconstitutional facially as to you, and you don't explain how to get there. I mean, you just assume that we understand that we're bound by this district court case in Alexandria or the Seventh Circuit case from 1973 in the Seventh Circuit or somewhere like that, and you go right on. We've got authority here that you have to take up the bodges first. Did you know that? I'm not aware of what case you're talking about. Have you ever heard of Preston v. Leake? I'm not aware of that case. There's a case called Preston v. Leake, I think it was 2011, written by Judge Niemeyer, and I was one of the panelists. The other one was Judge Hamilton, as a matter of fact. That case says when you've got this kind of situation, you take up the plied challenge first. They've got this thing called constitutional avoidance. Ashwander keeps jumping up, and you've got to figure out the plied challenge first. There's a little difference for First Amendment stuff, but I recognize that, and he explains that. This is all in Preston v. Leake, and it's published. It's precedent here in this courtroom, okay? I apologize for not being aware of the case, Your Honor, and I take it that that involved a conviction under 18 U.S.C. 371. So do you stipulate that your client or your clients, if you represent both of them, are guilty under any applied challenge that could or possibly could be raised? Well, we simply haven't made any as-applied challenge, Your Honor, so I can't stipulate to that. It's not relevant to an over-breath challenge. Well, it is relevant because Preston v. Leake says we've got to address it first. Well, again, Your Honor, I apologize for not being aware of that case. So do you stipulate that your client's guilty under any applied challenge? I do not stipulate that, Your Honor. You don't stipulate. So you can't get us past the first step. So how are you going to get to a facial challenge if under Preston v. Leake, if I haven't misrepresented it to you, we have to dispose of the applied challenge before we go to the facial challenge? Well, Your Honor, I would think that the Supreme Court's case in Stevens is instructive on this point, where the defendant in Stevens did not make any as-applied challenge to his conduct, which was clearly covered by constitutional fragments of that statute, the statute being 18 U.S.C. 48. I can't find anything in the Supreme Court that's contrary to Preston v. Leake on the sequence that we deal with, how we deal with it. There's no as-applied challenge that was made, Your Honor, in the Stevens case. It was purely a facial challenge, and the Supreme Court in Stevens made it clear. But you didn't go to trial. Here you pled guilty. You made a motion, and Judge Moon turned it down. And then you went in and you made a deal, and you stipulated the six pages of facts, including some atrocious conduct that your people have been engaged in, and you pled guilty to a conspiracy offense. Count one of the indictment. That's correct, Your Honor. And then you come up here and say we want to challenge the object of the conspiracy, and the government says you don't raise an applied challenge, and you haven't. That's correct. That you don't, and that you're not raising it on appeal. And that's the reason I ask you, if you agree with the government, you haven't said in your brief or your reply brief that you disagree with them. They put it in the footnote. They beat you up on it. They put it in two or three different footnotes. Yes, the government wishes we would have made an as-applied challenge in this case, but instead we've made a facial challenge. Well, under Preston v. Leake, we got to dispose of that first. Well, I'm happy to address that case. I'm giving you a chance to give it up real fast if you stipulate. If you'll agree that your people are guilty of the charge in count one with respect to any possible applied challenge, that you don't have an applied challenge and you're never going to make one. We're never going to make an as-applied challenge, Your Honor. You're never going to make one. Not unless this case got sent back and vacated and we had to take it to trial. Well, now not unless. Now then you've qualified. Well, I think, of course, if this court was going to vacate the convictions and send us back and find the plea was invalid or there's any issues, then I can't say that the clients wouldn't then choose to take it to trial and make any and every possible defense. But as presented here, they've never made an as-applied challenge. They're not making it here. And the court can find that to the extent that we need to stipulate that there's been no as-applied challenge made and that they couldn't do so, that's fine because under the Stevens case, under the Williams case, an over-breath challenge can be made regardless of how a statute applies to the individual conduct in the case. And that's because of the First Amendment principles that we're worried about with over-breath. And it's important that this statute is to recognize how broad the statute is and it's broad in several important ways. And I know you haven't had a chance to get to the merits, and we'll give you an opportunity here in a second, but I have another preliminary question, I guess, not entirely related to what Judge King was talking about. But this statute appears to be akin to an attempt statute because it doesn't suggest that you have to consummate the substantive offense, the riot, to be convicted. And then it has a definition of riot that suggests that sometimes it requires a number of people to engage or incite or be part of the riot. How does that fit within a charge of conspiracy? I mean, you've got already a definition that requires one, two, three, or more people, an attempt. So is there any problem with charging a conspiracy to attempt an offense that involves, by implication, involves multiple people? Well, I think it certainly reveals the over-breath of the law and how much it can sweep under its grasp, the fact that in this case, any case that's been charged as conspiracy, and the reply brief that was submitted by the amicus in this case, which point out how frequently the charge, to the extent this statute's been used at all in the last 50 years, it has been charged as conspiracy. And when we see an agreement to try to commit the Anti-Riot Act, which only requires any overt act taken towards one of those prohibited rioting activities. And as the court has pointed out, you don't even have to actually do it as long as you attempt to do it. We just see the several levels of attenuation here that show how much suppression can be swept under the grasp of the law. Well, so why, assuming all of that is correct, why isn't the answer then simply just to sever the offending provisions of the statute? So I think severance is only appropriate if Congress would have intended whatever is left, whatever remains, as a stand-alone statute. And assuming that this court would say, well, okay, we see in here, there's a reference to committing acts of violence and furtherance of a violation that is furthest away from any First Amendment-protected issues that the statute raises. If the court was just going to sever it to focus on, for example, traveling with the intent to commit an act of violence or riot and then actually doing that, which, of course, the statute doesn't require because it only says any overt act and the definition of riot is also replete with problems as set forth in the briefing, that still, that's not what Congress would have intended. Because that would just duplicate what's already available to the states. And the legislative history that we've cited in the reply brief becomes relevant. Well, there's always, I mean, federal statutes often duplicate efforts of states to prosecute criminal statutes. That can't be right. Well, that's not the, they do. But in this case, the legislative history makes clear that they were trying to add something to the toolkit. They weren't just saying we need to prosecute rioting, local rioting behavior because the states. But they were doing it in the context of Brandenburg, which made clear that there were some limits on what Congress could do. Well, respectfully, Your Honor, this happened before Brandenburg. The Anti-Riot Act was passed before Brandenburg, before Congress had the benefit of knowing what Brandenburg said. You're right. So let's assume that's correct. But do you think that Congress would have simply thumbed its nose at the Supreme Court and said, we don't care what Brandenburg says. Our intent here is it's an all or nothing proposition. I do, Your Honor, because what we see from the Anti-Riot Act itself, its structure, it's focused on actions that were instigating that came prior to a riot. It's focused on things in furtherance of a riot. It does not cover the actual rioting behavior itself. And that text is consistent with the legislative history here, which shows we're focused on trying to stop riots before they ever started. But doesn't that arguably, I mean, you talk about how Congress wanted to get not just at the actions, but at speech ahead of time and things like that. To me, that suggests Congress had a very broad goal, right? They wanted to get at all angles of this problem. And doesn't that counsel in favor of preserving as much of the statute as we can by severing any part that we find unconstitutional, but leaving something. It suggests that Congress wanted to get at this problem any way that it constitutionally could and therefore would still want a pared down version. Well, so I think I have two responses. One, I think that there's also another relevant part of the statute that is the original 2101 that says a judgment of conviction or acquittal on the merits under the laws of any state shall be a bar to any prosecution here under for the same act or acts. That's an exception to the traditional double jeopardy principles that would apply for separate sovereigns. And it again suggests that Congress was not trying to duplicate or allow for federal jurisdiction to exist where the state could handle something, which is consistent again with the legislative history we cited. Everything about the text of the law shows a focus on stopping riots before they started and not just creating a federal assault statute. We don't have any legislative history that shows. Well, it would still, I don't see how it would still stop them before they started. If you're going to prevent people from traveling to commit an act of violence and taking another overt act with the purpose of an act of violence, that's all still ahead of time. Well, under the government's proposed at least narrowing construction of the statute, they think that you have to at least say you'd have to actually travel with the intent to commit the act of violence and then thereafter actually commit the act of violence. They agree that any overt act is problematic. But I do want to say even if the court was going to sever the statute in this way, you'd still have to vacate these appellants convictions because they pled guilty. Couldn't we leave that to the district court to figure out? You could leave it to the district court to send back to see whether they necessarily pled guilty to all the elements. I say that they have not because of the fact of how the indictment was publicly contained, the judgment and the statement of facts here certainly would not show that they pled guilty to the, just that part, whatever severed part might remain of the anti-riot act after the court proceeds. But I think the case in Stevens is really, again, relevant for this court because in that case, instead of severing off the unconstitutional parts of that law, the Supreme court struck it down. That was in April of 2010 and the system worked the way that the constitution envisioned by December of that same year, Congress passed a new narrower law. Instead of advocating, and I see my time has expired. If I may just finish my sentence instead of having the government in this case, advocate to this body for why the law should be fixed and rewritten. So it's constitutional. The department of justice can go to Congress and say, this is why we need this law. This is why it's important to us in this time. And then the Congress can pass a narrower constitutional version. Thank you. Thank you. Ms. Rottenborn. Morning. Your honors may please the court, Laura Rottenborn on behalf of the government defendants admit that the anti-riot act was constitutionally applied to them to get them of their premeditated violent conduct. Nevertheless, they are asking this court to take the drastic and sparingly used approach of facially invalidating an entire statute based on a concern of some worst case scenario that has never come to pass, may never come to pass. And regardless pales in comparison to the plainly legitimate sweep of the statute, which was designed to both punish and deter those who are genuinely interested in uprooting the first amendment by turning peaceful assemblies into violent riots. As this court knows the principles of constitutional avoidance require this court to exercise facial invalidation sparingly and only as a last resort when no other remedies are available here, there are three other remedies and any one of those remedies is sufficient to affirm the convictions in this case. So you're saying under the constitutional avoidance doctrine, we don't have to reach the facial challenges. The government believes that the statute can be construed narrowly to cover only unprotected speech and unprotected conduct. And you don't even need to reach the question of overbreath. However, if this court disagrees and finds that there are portions of the statute, particularly embedded in a two regarding the promotion and encouragement of speech, then yes, you would turn to the overbreath analysis. It's your position is the government's position that the only thing that they were only things, actually were convicted of are the ones that are specified in the statements of offense. There are two of those statements of offense. One of them is five pages and one of them is six pages. They specify in somewhat great detail what they did in California and in Charlottesville and in getting there and all of that. If those were the acts that they did, those are the only things that support the indictment, even though the indictment alleges some other things. If that's what they did, that's how the statute was applied to them. And the constitutional avoidance doctrine can still step in and we don't have to go any further. That's exactly right. Your honor, they did not make it. They say you agreed to lift them challenge. Facially. The application, the application is the wrong word. I guess the, the, the, the, the, the, the, the,            the, the, the, the, the, the, the, the, the, the, the, the. The government agreed to let him challenge facially. The ride act. That's correct. We did your honor. Why don't you make them plead guilty to the rider? They are guilty of committing a violation of the anti-riot act. Straight up plead guilty to the ride act. And then we wouldn't have all this stuff about whether the case up in Alexandria controls how we deal with it down here. It is certainly possible that the defendants here could have pledged to either charge. The fact supported a conviction either way. Their violent conduct was a violation of the act and violation of a 371 conspiracy for prosecutorial discretion reasons. And part of plea negotiations. Ultimately, the plea here was reached to a 371 conspiracy, but that does not bear on the question before the court today, which is whether or not the defendants can launch a successful facial attack. They cannot. Their conduct cannot in any way, shape, or form find sanctuary in the first amendment. The first amendment does not protect incitement. It does not protect violent acts, and it doesn't protect violent. But the first of them, it's different in this context. I mean, the application of the constitutional avoidance doctrine is stricter. It's more carefully looked at in the context of first amendment issue. That's correct, your honor. And that is why the government agreed to a carve out in the plea agreement to allow the defendants to facially challenge the act. Because in the doctrine of first amendment law, there is a little bit more flexibility to launch a facial challenge. Even when, as applied, the law was constitutionally applied to these defendants. And so we do agree that the defendants have a right to launch a facial challenge. It is just that the challenge is meritless. Under the Williams balancing test that the Supreme Court has stated must be vigorously enforced, any potential reach of prohibited speech is clearly outweighed by the legitimate sweep of this statute. And as the Supreme Court has reiterated time and time again, in Williams, in Hicks, and in Broderick, this speech that is reached, that is protected, must be both substantial and real in order for this court to even consider facial invalidation. And here, never once in the history of the use of this statute has there ever been a successful as applied challenge. Well, there hasn't been much of a history of the use of the statute. So I don't know that we can attach too much significance to that. That's true. It has been infrequently used, but that cuts in both directions because in the over breadth analysis, a factor the court should consider is whether or not you can conceive of the likelihood of impermissible applications of the statute. And as the Sixth Circuit in its en banc decision just from a few years ago, reviewed with great care, one factor the court should consider when making that balancing test is the history of the use of the act and whether or not the government has used the act that has resulted in impermissible applications. Here, there has been absolutely no impermissible use of the act, and any perceived, possible, or imagined impermissible applications of the act are so small and so marginal that they are dwarfed by the permissible applications of the act. The heart of this act is to get... It doesn't seem like, at least for some of these categories, we have to imagine too much. It's not a, you know, the Sixth Circuit had situations where there were one or two kind of fanciful hypotheticals,  They spent a long time talking about those hypotheticals and ultimately decided, you know, the rest of the statute suggests that those don't make it substantially overbroad. But here, you know, the category of incite a riot on its face might suggest that it's not, you know, that's not a problem. But then when you read the definition, definition seems to say, mere advocacy of acts of violence or the right, the rightness of committing acts of violence. And that's, it doesn't take any imagination to read that to mean speech, protected First Amendment speech. That's an entire, that's category A-1. That's an entire category that's covered. So, what are we supposed to do with that? The government agrees that the mere advocacy of violence cannot be prescribed. And I understand Judge Rushing, for you to be referencing the definition embedded in A, 2101A-2. And it's unfortunate that there is a double negative there. In essence, what the court has said is that the mere advocacy of violence cannot amount to the mere advocacy of an idea. And that can't be prescribed. So there's an exclusion to an exclusion. But an exclusion does not make an actual affirmation criminalized. Well, but there's more in that definition in 2102B. It includes the verbs organize, promote, encourage, which one, it doesn't take much imagination to conclude that even that might suggest something less than an incitement, something that might be covered by the First Amendment right to express oneself, to encourage, to organize, without necessarily immediately inciting a riot. So what do we do about that? There's no doubt that's the closest call within this statute. The language of promote and encourage can have many different applications. For example, a defendant can promote a riot by throwing the first punch, like our defendants did here, or throwing a Molotov cocktail, or putting people in a chokehold. That is a form of promotion. But of course, promotion can also be speech. And the government has offered a construction of the statute regarding promotion and encouragement that encourages this court to narrowly construe that verb to only cover speech with an imminent action to violence. In other words, speech that propels a crowd to violence, it propels lawless action, and apps that causal connection. We agree the speech would otherwise be protected by the First Amendment. If we agree with you that we can either do that, or perhaps sever the statute to satisfy the requirements of the First Amendment, wouldn't the defendants be entitled to decide whether or not to replead based on that new view of the statute? No, Your Honor. If the court were to find that the statute was overbroad, which the government respectfully submits it should not, here the balancing test weighs in favor of the government. But if the court should then move to the last resort step of severance and partially invalidate the statute, then the court should conduct a harmless error test. And here, the defendant signed under oath a five- to six-page statement of the facts regarding their conduct. And no reasonable juror could find that those admissions signed under oath under the penalty of perjury do not satisfy the elements of the permitted portions of the statute. Did you make that argument in your brief? Yes, Your Honor. It is at the conclusion of the severance section, at the very end of the brief. The court does not need to reach the issue of severance. The attorney for these fellows, as I understand it, gave up as applied child. Yes, they have, Your Honor. This morning. And you say in your brief they gave it up already. Yes, Your Honor. Are you familiar with that precedent versus the leak? Your Honor, I had not been familiar with it prior to this morning's hearing. Well, it says we've got to be satisfied with that first. That's the way I read it. I endeavor to quickly look at the case during my opposing counsel's argument. I would be happy to review it with care and submit supplemental briefing on that point. We could do so very promptly. Upon a very quick glance at the syllabus of that case, I understand the defendants in that case who have raised both an as-applied challenge and a facial challenge. And because an as-applied challenge would dispense with the need to address a facial challenge, the court first addressed the as-applied challenge, deeming that challenge to be meritless. It then turns its attention to the facial challenge, which it also rejected. Beyond that, I'd be happy to read it with care after this hearing today and submit briefing. I understand the court to be interested in severance, but I do want to emphasize that severance is a last resort option that you don't need to reach here. You talk about severance in your brief. Pretty substantially. Yes, Your Honor. You fall back on that. Absolutely. It is certainly a remedy available to the court here to avoid invalidating the entire statute. Invalidation of an entire statute is strong medicine in the words of the court and should be used extremely sparingly only as a last resort. And severance here absolutely would be appropriate because there are four separate subparagraphs, at least one of which has absolutely nothing to do with speech. And that's the heartland of the Anti-Riot Act. It targets acts of violence. Is that number three? Yes, A3, Your Honor. And based on the legislative history... Was that number three or D? They numbered them wrong or lettered them wrong or something. That's correct, Your Honor. They were a little bit sloppy. It would be A3, which would also correlate to letter C, depending on which version you were looking at. Yes. Yes. The way the statute is drafted, there are four subparagraphs of the statute, any one of which amounts to a violation of the act. There is no reasonable debate... You all prosecuted them under three? We prosecuted them under 2101A generally. We did not specify a subparagraph. We should have done a little more... been more specific? Yes, Your Honor. We have learned that lesson. And indeed, in the future, we will be careful to do so. But understanding that at the time, there were questions regarding the divisibility of the statute and how it applied to the facts of this case, we took the conservative route and charged it as 2101A generally. I will also add that, of course, the facts of this case support a conviction under all four of the subparts. The defendants here incited a riot, they promoted the riot, they threw punches, they put people in chokeholds, they kicked people down, they participated in the riot, they carried on the riot, they encouraged others to do so, and they aided and abetted others. You think promoting a riot is okay in the broader context of speech? Or is it peculiar to this case to what the defendants did? Because promote, I think, has connotations of protected speech as well. I mean, organize, promote, encourage, those are troublesome verbs for me. The rest of the section there, to participate in or carry on a riot, that seems clearly beyond bounds. But, I mean, it's those verbs that are troubling. The verbs are certainly the most difficult aspects of this statute to wrestle with, and that is why the government has advocated for a reading of those verbs that require a causal connection with imminent violence, not a broad reading of the term promote or encourage. Here, you can promote in many different ways, and the government would agree that if you merely promoted the abstract idea of a riot, that would be analogous to promoting or otherwise advocating for violence generally, and that would not be prescribable.  But you are specifying the date, time, and place in the actions you are going to take to turn a lawful assembly into a riot. That is prescribable speech. So your colleague says that your limited interpretation of the statute can't be correct because Congress was trying to get at something more, and she cites a provision in the statute that eliminates what would otherwise be a double jeopardy issue by saying that if a defendant is prosecuted under state law, the federal statute doesn't apply, and Congress couldn't possibly have believed that the statute, either as interpreted by the government or severed, was what it intended. So what's your response to that? That's belied by the record, the legislative history, and the application of statutes by dual sovereigns all the time. There are many statutes that cover the same conduct that are prosecuted by both the state and the federal government, and there is a discretionary determination as to when a state may bring a charge versus the sovereign federal government. Many factors go into the analysis, whether or not the conduct was multi-jurisdictional. How complex is the crime? Do the local law enforcement resources, are they equipped to handle this particular case? And in this instance, the actual riots took place in two different jurisdictions. They were in Charlottesville, and they were in Albemarle County. The defendants who are convicted of having incited and participated violently in this riot came from California, and much of their planning was done in California. So this is a quintessential example of where federal allocation of resources and the use of an important federal statute is appropriate and needed because the local authorities don't have the tools to do it. Moreover, Brandenburg was decided in 1969. It is true that that was after this act was enacted. However, Dellinger, the Seventh Circuit, upheld this act after Brandenburg had been decided, finding it to be entirely constitutional. And in the 50 years since then, Congress has never thought or felt the need to reconsider the act. So it still deems it to be an important federal tool. Can I ask you the same question that I asked your colleague over there about the peculiar how the statute prosecutes or attempts to criminalize an attempt and has a definition of riot that would suggest that it requires a number of people to participate in a riot and whether or not it's appropriate to, on top of that, add a conspiracy charge to what is an attempt offense. An attempt offense generally requires only a substantial step. But here, this statute requires the fulfillment of the overt act and it makes it different than a standard attempt offense. So if the court's concern is that you could commit a violation of a conspiracy, which is the object of which is only an attempted offense, that concern can be alleviated because even within the actual object of the conspiracy, you have to have committed two acts with riotous intent. So the initial interstate act with riotous intent and then the fulfillment of an overt act with riotous intent. So you would not be having an inchoate crime that then criminalized another inchoate crime without there being the completion of an overt act. I understand that there are certainly ways this court could construe the verbs, particularly in A2 of the statute, to potentially cover protected speech. And although we encourage the court to narrowly construe it so that it does not, I just want to emphasize that although the Stevens case... What about the verb urging? Urge is not a means of the crime. That is found only in the definition to incite a riot. And urge and instigate have been interpreted by the Seventh Circuit in Dellinger as to be tantamount to incite and that they have to have a propelling of cause of action here, either lawlessness or violence. And I believe the Seventh Circuit relies on the standard definition in Merriam-Webster for both urge and instigate. And we would encourage the court to do the same here. Are you familiar with the district court in California that essentially threw out the statute in its entirety? Yes, Your Honor. Do you have a response to the reasoning in that case? Yes, Your Honor. Government believes that reasoning is erroneous and has appealed to the Ninth Circuit. Well, I'm surprised. You disagree with it, right? We disagree with it, yes. And it's on appeal to the Ninth Circuit. It is on appeal to the Ninth Circuit Court of Appeals. The government has filed its opening brief in that case. It is my understanding that the response brief has not yet been filed. I'm sure it will be argued sometime in the future. The government, of course, is a collective government, so we have been coordinating with our counterparts in California to ensure a consistent position that we are presenting to both courts. What a novel proposition. That's great. Respectfully, the district court in the Northern District, excuse me, in the Central District of California got it wrong. There are many fallacies to the court's reasoning in that case. They've been fleshed out in the U.S. Attorney's Office brief in that matter, and many of them have been addressed in our briefing as well. In that case, the court failed to conduct the appropriate balancing test. The protected speech that must be reached in order to officially invalidate a statute has to be so substantial and so real in relation to the plainly legitimate sweep that it justifies striking down an entire statute that otherwise has very appropriate and important enforcement tools. And respectfully, the court in that case did not consider that argument appropriately, did not follow the Supreme Court's admonishment that that is the preferred course and that facial invalidation must be used very sparingly, and so we disagree with the court's reasoning in that case.  And Broderick v. Oklahoma, Colorado v. Hill, and the litany of Supreme Court cases that have conducted this same balancing test and have upheld statutes on a facial challenge as not being overbroad and have allowed litigants who are otherwise concerned about the outer reaches of a statute to cure those concerns through as-applied litigation. That is the bedrock principle of our constitutional adjudication system, and that is what should have happened here, but it can't happen here because if they brought an as-applied challenge, it would also fail. Their violent conduct and their incitement finds no sanctuary in the First Amendment, and we ask this court to affirm their convictions. Thank you very much, Ms. Rotenberg. Ms. Lourish. Thank you, Your Honor. I want to start with the government's misunderstanding or intentional misrepresentation of the constitutional avoidance doctrine. It's not a license to rewrite a statute to avoid constitutional problems. The Supreme Court has recently explained it very carefully in the Davis decision and also in the Stevens decision that when we use avoidance principles, and this is just last term in the Davis decision. But it tells the courts don't resolve constitutional issues unless you have to. Well, I think specifically. Unless you have to. Like in this case, if these fellows are guilty of sin under the applied situation, maybe you don't have to deal with the facial challenges. You've got applied challenges and they're guilty of sin and they're in the penitentiary where they ought to be for doing some of these things. The court under the constitutional avoidance doctrine may not have to address or may not have to address in as great a depth the facial challenges, acknowledging that there's a different application perhaps because of the First Amendment issue. Well, in the Davis case, the Supreme Court just last term explained that constitutional avoidance applies if there's two reasonable competing interpretations of the same language. It's not an overall license to avoid constitutional issues. It's only if one thing could be interpreted in one of two ways. Of course, then the court should interpret it narrowly to avoid a constitutional issue. That's not what we have here. We have, and the reason that overbreath challenges are an exception to the principles you're talking about, Your Honor, is because of the chilling speech. And some of those aspects of the statute were highlighted in your conversations with my colleague. In particular, it is not in a reasonable construction of the language encourage, promote, organize, to say that those things all mean essentially instigating violence. That's not a dictionary definition of any of those words. It's not the common understanding. And the fact that the government points to the fact that later in the statute it says those things include but are not limited to urging or instigating only proves the point that Congress was not limiting them exclusively to urging or instigating violence. In the Williams case, which the government rests heavily upon, there the Supreme Court said, Yeah, if there's two different literal dictionary definitions of a word or three different dictionary definitions of the words that are at issue, then we can look at the broader context to figure out which definition we should apply. That's not what we have here. We don't have any commonly understood definitions of these words that support the government's reasoning. What do you think of participate in or carry on? I know those still have a sort of double negative definition that we're given, but it doesn't seem to fit those quite as well because those seem to indicate conduct, participating in, carrying on. I certainly agree, Your Honor. On their face, the verbs are clearer, but we do have the exact problem that the court has noted that they are defined explicitly to include the mere advocacy of violence. And we also have the problem of the riot. I'm wondering if that helps narrow them down at least that those terms then wouldn't be substantially overbroad. You might still be able to imagine a kind of an outlandish prosecution under those for just speech or just ideas, but maybe that that could be challenged as applied. But as a whole, those would not be facially overbroad. Well, I think one additional problem is the fact that you don't have to actually have done one of those acts. So the government asks you to also narrowly construe the actual second element of this offense, to say you actually have to have completed the act of participating in or carrying on the riot in this particular example. You have to take an overt act. It just says, right, any overt act for that purpose. You don't actually have to have participated in the riot. If you just took an act towards getting there, if you just traveled to try to get to the riot, that is both completion of the commerce event here, the travel, but also the overt act towards participating, whether you ever get there or not. We have to have another overt act. So there would be two, right, the travel and other overt acts. Sure. It could be the purchase of the plane ticket and then getting on the plane. But there's plenty of ways where because you don't have to have actually participated in or carried on the riot, that there's an attenuation where there's no immediacy that links the speech to any kind of violence, the expression to any kind of violence. And that's the immediacy is the link that protects against the over breadth. And I think the other thing I wanted to point out is the government suggested that it's clear it's harmless error. If the court severs, no matter what, no matter how the court would sever, the defendant's convictions should still stand. And that's just not the case. The government in its own supplemental brief in response to the court's order said that if there's more than one legal theory for how a conspiracy exists and one of those legal theories is unconstitutional, I quote, the general verdict of guilty cannot stand unless the record establishes the jury convicted based on the constitutional object of the conspiracy. There's not evidence here that the defendants pled guilty to whatever this imagined new constitutional object of the conspiracy might be based on however the court might sever the anti-riot act. And so even if the court was to sever, it would have to remand and vacate the convictions. Thank you. Thank you, Ms. Norrish. We'll come down in Greek council and then we'll call the next case.
judges: Robert B. King, Albert Diaz, Allison J. Rushing